No. 13394

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

THE STATE OF MONTANA,

                Plaintiff and Respondent,

    -vs-

DONALD E. BRINER,

                Defendant and Appellant.

---

Appeal from: District Court of the Ninth Judicial District,
             Honorable R. D. McPhillips, Judge presiding.

Counsel of Record:

  For Appellant:

      Kampfe and Perhacs, Red Lodge, Montana
      D. Frank Kampfe argued, Red Lodge, Montana

  For Respondent:

      Mike Greely, Attorney General, Helena, Montana
      Dennis Moreen argued, Assistant Attorney General, Helena,
       Montana
      Rae V. Kalbfleisch, County Attorney, argued, Shelby,
       Montana

---

                Submitted: June 9, 1977

                Decided: JUL 15 1977

Filed: JUL 15 1977

_Thomas J. Kearney_
                        Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

Defendant Donald E. Briner was charged and convicted of burglary in the district court, Toole County. From the jury verdict and subsequent sentence of 8 years, with 6 years suspended, defendant seeks this Court's review of four issues:

1) Whether the district court erred in denying defendant's various motions to suppress and dismiss.

2) Whether the testimony of the accomplice had the sufficient independent corroboration required by section 95-3012, R.C.M. 1947.

3) Whether the Information filed against defendant was sufficient to inform defendant of the nature of the charges against him.

4) Whether the district court erred in failing to grant defendant's motion for a new trial based upon newly discovered evidence.

The charges against defendant Briner arose in Sunburst, Montana from the burglary of the Farmers Co-op Oil Co. between the hours of 6:15 p.m., July 11, 1975 and 6:45 a.m., July 12, 1975. Three individuals were charged with the burglary-- Donald E. Briner, George Cain, and William Felton.

Briner and co-defendants were stopped on July 13, 1975 outside Shelby, Montana by deputies possessing this information: (1) Three hours prior to defendant's arrest, sheriff deputies responded to a burglary in progress at the Co-op in Devon, Montana; (2) on reaching Devon a highway patrolman observed the pickup defendant was later driving when arrested; (3) this pickup had left the vicinity by the time the deputies reached the Devon Co-op;

(4) at the Co-op the phone lines were cut, a window broken, and a door left open; (5) the deputies observed footprints leading from the Co-op to and across a creek in the direction where the pickup had been parked. The footprints were similar to those found at the Sunburst Co-op the previous evening. The tire tracks observed at both Co-ops were similar; and (6) the deputies had information the pickup defendant was driving was equipped with a radio scanner tuned to police frequencies.

On July 13, 1975 upon stopping the Briner vehicle, the deputies examined the pickup tires and determined they were similar in design to the tracks found at the Devon and Sunburst Co-ops. Deputies also observed defendant's and Cain's pant legs were wet; that a pair of wet waffle stomper boots was on the pickup's floor-board; and that a radio scanner was present. Arrest was made without a warrant, the pickup was seized.

On the same day a search warrant was issued to search the vehicle defendant was driving. This warrant was returned on the same day, together with the waffle stompers and gloves. Later, on July 25, 1975, deputies removed the vehicle's radio scanner and on July 26, 1975, the vehicle's tires.

The defendant was charged by Information on September 4, 1975 with the burglary of the Farmers Co-op Oil Company of Sunburst, Montana, "on or about July 12, 1975".

Evidence presented to the jury showed:

1). Footprints from waffle stompers were found inside and outside the Co-op after the burglary; defendant owned a pair of waffle stompers which was in his pickup at the time of his arrest; expert opinion found the prints to be made by boots with a similar tread design and wear pattern as those of defendant.

- 3 -

2). The vehicle defendant was driving was seen parked on the Interstate highway ramp overlooking the Co-op during the early morning hours after the night of the burglary; fresh tire tracks were found at the Co-op; expert opinion found the tire tracks and the tires from the pickup defendant was driving to be of similar tire design and tread wear.

3). Defendant's vehicle was equipped with a radio scanner tuned to the major law enforcement frequencies.

4). An accomplice of defendant testified to the participation of defendant in the burglary.

From this evidence the jury convicted defendant of burglary.

On the first day of trial, after the jury had been voir dired and passed for cause by the county attorney, the attorney for defendant attempted to file various motions to suppress evidence and to dismiss. The district court recessed and took testimony and argument on the motions; later it denied all motions. From that denial defendant raises his first issue on appeal.

Counsel for defendant argues it is his client's constitutional right to use the exclusionary rule at any time. In State v. Dess, 154 Mont. 231, 235, 462 P.2d 186, this Court reviewed the exclusionary rule:

> "The exclusionary rule fashioned in Weeks v. United States, 232 U.S.383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081 (1961) excludes from a criminal trial any evidence seized from the defendant in violation of his 4th Amendment rights. In Mapp and Weeks the defendant against whom the evidence was held to be inadmissible was the victim of the search. In the recent case of Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) the Supreme Court rejected any expansion of the 4th Amendment and the exclusionary rule to include those who are aggrieved solely by the introduction of damaging evidence, or those whose rights were not violated by the search itself. * * *"

In a recent case the United States Supreme Court reiterated that the exclusionary rule was not a personal constitutional right of the aggrieved party and again rejected the fourth and most critical justification for the exclusionary rule enunciated in Mapp. In United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L ed 2d 1046, 1056, the Court said:

> "The debate within the court on the exclusionary rule has always been a warm one. * * * The Court, however, has established that the 'prime purpose' of the rule, if not the sole one, 'is to deter future unlawful police conduct.' [Cited cases omitted]

> "Thus

> "'[I]n sum, the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.' United States v. Calandra, 414 U.S. at 348, 38 L Ed 2d 561, 94 S.Ct. 613, 66 Ohio Ops.2d 320." 49 L ed 2d 1056.

The question of "timeliness" is well defined in Montana. Section 95-1806, R.C.M. 1947, sets forth the procedure for filing motions to suppress evidence illegally seized and provides in part:

> "(a) A defendant aggrieved by an unlawful search and seizure may move the court to suppress as evidence anything so obtained.

> "(b) The motion shall be made before trial unless for good cause shown the court shall otherwise direct.

> "(c) The defendant shall give at least ten (10) days' notice of such motion to the attorney prosecuting or such other time as the court may direct. The defendant shall serve a copy of the notice and motion upon the attorney prosecuting.

> "* * *."

In State v. Gotta, 71 Mont. 288, 290, 229 P. 405, this Court, speaking to the issue of "timeliness" stated:

> "* * * One wishing to preclude the use of evidence obtained through a violation of his constitutional rights must protect himself by timely action. If he

has had opportunity to suppress the evidence
before trial and has failed to take advantage of
his remedy, objection to the evidence upon trial
will not avail him. * * *" 71 Mont. 290.

See also: State v. Gallagher, 162 Mont. 155, 509 P.2d 852.

In the instant case defendant was aware of the facts and circumstances surrounding the arrest and the possibility of the introduction of certain evidence, long before the first day of trial. Upon filing of defendant's various motions to suppress, no offer of evidence nor showing of good cause was given which prevented defendant from filing his motions before trial. If under section 95-1806, we assume the evidence was obtained by an unlawful search and seizure, it was necessary for the accused, who desired to exclude such evidence from his trial, to make a timely objection to its introduction. Such was not the fact in this case, as the trial judge found. Also a review of the record would allow the evidence in any event.

Defendant's second issue concerns whether the testimony of William J. Felton, an accomplice, was sufficiently corroborated by independent evidence. Defendant and plaintiff agree section 95-3012, is the applicable statute and the numerous prior opinions of this Court concerning requirements for corroboration of an accomplice's testimony have continued validity. Section 95-3012 replaces section 94-7220, R.C.M. 1947. The only difference between the present provision and its predecessor is the substitution of the words "one responsible or legally accountable for the same offense, as defined by section 94-2-106" for the term "an accomplice".

The question whether there is sufficient, independent corroboration of an accomplice's testimony, tending to connect a defendant with the commission of a crime is one of law and

must be decided by the trial court. State v. Spielmann, 163 Mont. 199, 207, 516 P.2d 617. See also: State v. Moran, 142 Mont. 423, 452, 384 P.2d 777; State v. Dess, supra.

The requirements of section 94-7220 the predecessor of section 95-3012, are well established in Montana. This Court in Spielmann repeats the requirements of section 94-7220 as explained in Dess:

> "'* * * Appellant suggests that the evidence, independent of the testimony of an accomplice, must prove him guilty beyond a reasonable doubt. This is not the law in Montana, however. Though there must be some independent evidence connecting the defendant to the crime, it need not be sufficient alone to sustain a conviction. The jury can consider the testimony of the accomplice and give the testimony whatever weight they desire. In State v. Donges, 126 Mont. 341, 251 P.2d 254, (1952), the Court stated at page 347, 251 P.2d at page 257:
>
> "'"The evidence which corroborated Bungard could be furnished by the defendants. It could be circumstantial. It need not extend to every fact to which Bungard testified and need not be sufficient to justify a conviction or establish a prima facie case of guilt; it being sufficient if it tends to connect defendants with the commission of the crime. Whether it tends to do so is a question of law, while its weight-its efficacy to fortify the testimony of Bungard and render his story trustworthy - is a matter for the consideration of the jury. State v. Cobb, 76 Mont. 89, 245 P. 265."'"
> 163 Mont. 207,208.

In this case there is sufficient corroborating evidence in the record for the district court judge, as a matter of law, to warrant the submission of the case to the jury: (a) waffle stomper footprints were discovered inside and outside the Co-op after the burglary; (b) defendant owned a pair of waffle stomper boots seized on the same day as his arrest; (c) expert comparison of defendant's boots to footprints found at the Co-op demonstrated the prints were made by boots similar to defendant's; (d) the pickup defendant was driving was seen parked on the Sunburst Interstate 15 exit ramp overlooking the Co-op in the early morning hours following the night of the burglary; (e) fresh

tire tracks were found at the Co-op after the burglary; (f) expert comparison of the tire tracks found at the Co-op and the tires on the pickup defendant was driving determined the tracks were made by tires with similar tread design and wear as those of the pickup; (g) eyewitnesses who saw the pickup defendant was driving on the Sunburst exit ramp, observed the pickup proceed down the ramp and repark at the Texaco station across the street from the Co-op; (h) waffle stomper footprints led from the ramp towards the Co-op; and (i) the pickup defendant was driving was equipped with a radio scanner tuned to Montana law enforcement channels.

Defendant's third issue claims the time alleged in the Information was not sufficiently definite to inform defendant of the nature of the charge against him. This Court finds this issue without merit. Defendant's motion to dismiss, which challenged the sufficiency of the Information, was properly denied as untimely filed.

Defendant's fourth issue contends the court erred in denying his motion for a new trial, based on newly discovered evidence. This Court in State v. Gallagher, supra, set forth requirements for this motion:

> "* * * (1) That the evidence must have come to the knowledge of the applicant since the trial; (2) that it was not through want of diligence that it was not discovered earlier * * *." 162 Mont. 161.

By raising this issue, defendant requires this Court to review the discretion of the trial court. Section 95-2101, R.C.M. 1947, states in part:

> "(a) * * *
>
> "(b)  Motion for a New Trial
>
> "(1) Following a verdict or finding of guilty the court may grant the defendant a new trial if required in the interest of justice."

The trial court using sound discretion must decide if a new trial is required "in the interest of justice". Where the trial court acts within its discretion, this Court has no right of review. State v. Laughlin, 105 Mont. 490, 497, 73 P.2d 718; State v. Quigg, 155 Mont. 119, 147, 467 P.2d 692.

Here defendant supported his motion for new trial with four affidavits. Three were from alibi witnesses who purportedly saw defendant on the night in question, and one was from John S. Lindsey Jr., an investigator, who knew of and tried to locate one alibi witness before trial. This affidavit from Lindsey shows the alibi witness was known before trial. State v. Gallagher, supra. The trial judge was in the best position to weigh the merits of the other three affidavits. State v. Quigg, supra.

We find there was no abuse of discretion by the trial court in denying the motion for a new trial.

The judgment is affirmed.

_____
Chief Justice

We Concur:

_____

_____

_____
Justices.

Mr. Justice Daniel J. Shea specially concurring:

I agree with the result of this case but I do not agree with all that is said in relation to the search and seizure question.

The trial court did not find the motion to suppress was untimely. After the motion to suppress was filed the trial judge heard the evidence and denied the motion without stating his reasons. He left it for this Court to speculate as to the reasons he denied the motion. I do agree however, that the evidence was not illegally seized.

With regard to the exclusionary rule and its application to searches and seizures, I feel this Court is paying too much attention to the United States Supreme Court in interpreting the 4th Amendment to the United States Constitution, and not paying enough attention to Art. II, Section 11, of Montana's 1972 Constitution which provides:

> "The people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures. No warrant to search any place, or seize any person or thing shall issue without describing the place to be searched or the person or thing to be seized, or without probable cause, supported by oath or affirmation reduced to writing."

Undoubtedly we are bound by the United States Supreme Court in its interpretations of the United States Constitution but we are not bound by it when we implement and give meaning to Montana's Constitution. We certainly can reach a contrary result by interpreting similar provisions of Montana's Constitution.

Without specifically referring to the Montana Constitution this Court seems to be holding that the exclusionary rule is not a personal right of the accused, although the right to be free

from unreasonable searches and seizures is his personal right. Without the exclusionary rule the right to be free from unreasonable searches and seizures would be meaningless. I would hold the exclusionary rule is part and parcel of Art. II, Section 11 of the 1972 Montana Constitution and accordingly is a personal right of the defendant. This does not mean that a defendant can feel free to raise the issue at any time during the proceedings. But it does mean that a defendant must be informed, in sufficient time ahead of trial, that he has a right to make a motion to suppress. If a defendant files no motion to suppress, the court should obtain an informed, intelligent waiver.

Here, the defendant has shown no prejudice however, because the trial court did hear the motion to suppress and a review of the evidence clearly shows the motion was properly denied.

Daniel J. Shea
Justice.